851 F.2d 1269
 57 USLW 2068, 11 Fed.R.Serv.3d 987
 In re William TEMPLE, Alfonso Crisconi, Mary Emma Clark,
Mabel Johnson, Clara Huber, Evelyn B. Davis, Saskia Hessler,
Hyman Clamer, Fay Joy Roley, Bill King, Lamar Powell, Albert
Whatley, and Baron & Budd, P.C., Petitioners.
 No. 88-8412.
 United States Court of Appeals,
Eleventh Circuit.
 July 20, 1988.
 
 Brent M. Rosenthal, Baron & Budd, P.C., Dallas, Tex., Robert Jacobs, Jacobs & Cromplar, Wilmington, Del., for petitioners.
 
 
 1
 Dwight E. Tarwater, T. Harold Pinkley, Paine, Swiney & Tarwater, Knoxville, Tenn., Edgar A. Neely, III, Richard B. North, Jr., Neely, & Player, Atlanta, Ga., for respndent Raymark Ind., Inc.
 
 
 2
 Paul Gillenwater, Gillenwater, Nichol & Ames, Knoxville, Tenn., and C. Neil Pope, Pope, Kellogg, McGlamary, Kilpatrick & Morrison, Atlanta, Ga., for respondents Richard Joseph and Sarah Waldron.
 
 
 3
 Irene C. Warshauer, Anderson Russell Kill & Olick, P.C., New York City, for Keene Corp.
 
 
 4
 On Petition for Writ of Mandamus to the United States District Court for the Northern District of Georgia.
 
 
 5
 Before TJOFLAT, FAY and JOHNSON, Circuit Judges.
 
 JOHNSON, Circuit Judge:
 
 6
 Petitioners seek a writ of mandamus ordering the district court to vacate its order certifying a class action pursuant to Federal Rules of Civil Procedure 23(b)(1) and staying all related litigation pursuant to the All Writs Act, 28 U.S.C.A. Sec. 1651. For the reasons stated below, we grant the petition and issue the writ.
 
 I.
 
 7
 Raymark Industries, Inc. ("Raymark") is a Connecticut corporation which has at various times manufactured products containing asbestos. Raymark's use of asbestos has prompted the filing of thousands of personal injury lawsuits in numerous jurisdictions. Faced with an avalanche of litigation, Raymark moved the United States District Court for the Northern District of Georgia, before which was pending one of the personal injury suits, Waldron v. Raymark Industries, Inc., No. 1:88-CV-1229-RLV (N.D.Ga.), to certify a mandatory class action to consolidate all present and future asbestos-related personal injury actions brought against it. Raymark argued that certification was justified primarily because the corporation had limited assets from which claimants could be satisfied.
 
 
 8
 The district court accepted Raymark's assertion that its resources were insufficient to satisfy judgments from pending and potential lawsuits and to conduct its defense adequately. The court certified a mandatory class, consisting of:
 
 
 9
 [a]ll persons in the United States or its territories who have or who will have in the future claims against Raymark Industries, Inc., for damages for personal injury allegedly resulting from exposure to asbestos or asbestos-containing products
 
 
 10
 (Order at 11). The Court then stayed "all personal injury actions presently pending against Raymark, in both state and federal courts." (Order at 13). It found that Raymark's insurance coverage and other funds available to Raymark could not cover its potential liability.[1] The court also found that the cost of defending numerous small actions was rapidly depleting Raymark resources which might later be applied to victim compensation. The district court did not notify any of the putative class members, some of whom are petitioners here, prior to making its factual findings. Moreover, the court failed to conduct any adversarial proceedings on the question of the existence of a limited fund.
 
 
 11
 Petitioners are plaintiffs with claims pending against Raymark in several different states. Their cases are on the eve of trial and they seek relief from the district court's order which prevents the termination of any ongoing state court litigation.
 
 II.
 
 12
 Our authority to issue a writ of mandamus pursuant to the All Writs Statute, 28 U.S.C.A. Sec. 1651, is to be exercised only in drastic situations, when no other adequate means are available to remedy a clear usurpation of power or abuse of discretion. In re Paradyne Corp., 803 F.2d 604, 612 (11th Cir.1986); U.S. v. Fernandez-Toledo, 737 F.2d 912, 919 (11th Cir.1984). In addition, the fact that the district court's order is clearly erroneous and has raised new and important legal issues lends support to the use of the writ. See Bauman v. United States District Court, 557 F.2d 650, 654-55 (9th Cir.1977).
 
 
 13
 The petitioners here have spent years litigating in various state courts--many of their cases are on the brink of judicial resolution. They were given no notice of the proposed mandatory class certification, and they had no opportunity to present evidence in an adversarial proceeding. They have no right to an immediate appeal of the district court's decision as a final order. Williams v. City of New Orleans, 565 F.2d 874, 874-75 (5th Cir.1978). The district court's order will delay resolution of their claims indefinitely. The court's order, which essentially moves their cases back to square one, could hardly place petitioners in a more drastic predicament. Moreover, the district court's order raises important and novel questions of law. In light of these factors, we conclude that the prerequisites to issuance of the writ are met. See In re Bendectin Products Liability Litigation, 749 F.2d 300, 303-04 (6th Cir.1984) (mandamus granted to reverse erroneous class certification). See also In re Dennis Greenman Securities Litigation, 829 F.2d 1539, 1542 (11th Cir.1987) ("Parties may also seek appellate review [of an order certifying a mandatory class] through a petition for a writ of mandamus").
 
 III.
 
 14
 Initially, we note that any certification of a mandatory class in a mass tort case, especially one predominantly involving issues of liability and compensation, must be reviewed with utmost scrutiny. Such certification clearly implicates the Anti-Injunction Act.[2] See In re Federal Skywalk Cases, 680 F.2d 1175, 1182-83 (8th Cir.), cert. denied sub nom. Stover v. Rau, 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383 (1982) (certification of mandatory class action vacated on grounds that staying of state court suits violated Anti-Injunction Act). The court in In re Federal Skywalk held that the theory of a "limited fund" could not overcome the absolute language of the Act, and the two express exceptions provided in the Act--authorization by congressional Act and necessity of aiding jurisdiction--were inapplicable. Similarly, in this case the district court's order does not seem to be "authorized by Act of Congress,"[3] or "necessary to aid its jurisdiction,"[4] and is therefore highly suspect. See In re Glenn W. Turner Ent. Lit., 521 F.2d 775, 780-81 (3rd Cir.1975) (limited fund does not justify exception to Anti-Injunction Act on aid to jurisdiction theory). Because we vacate the court's order on other grounds, we do not decide whether the Anti-Injunction Act has been violated. However, we note that the principles of comity are implicated by the district court's disregard for the sovereignty of the state court systems enjoined.
 
 
 15
 Not only does the district court's order implicate federal/state relations, it clearly violates the individual constitutional rights of the petitioners. The court's failure to notify petitioners of the certification hearing violated due process. In In re Northern Dist. of Calif., Dalkon Shield IUD Products Liability Litigation, 693 F.2d 847 (9th Cir.1982), cert. denied sub nom. A.H. Robins, Inc. v. Abed, 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983) ("Dalkon Shield "), the Ninth Circuit held that the district court erred in making a Rule 23(b)(1)(B) certification without giving out-of-state plaintiffs an opportunity to participate in prior briefings or hearings. Id. at 857. Unlike class members in cases certified under Rule 23(b)(3) who may opt out of the action and have no need for prior notice of efforts to obtain class certification, members of a mandatory class need to be provided with notice to contest the facts underlying a certification they may strenuously oppose.
 
 
 16
 In fact, the non-adversarial nature of the proceedings below almost certainly led to the premature and speculative finding that a limited fund existed. The district court did not make a finding as to the actual value of Raymark's assets. Without a finding as to the net worth of the defendant, it is difficult to see how the fact of a limited fund could have been established given that all of Raymark's assets are potentially available to suitors. Had Raymark's motion been contested, such a salient fact would almost certainly have been adduced. See In re Bendectin, 749 F.2d 300, 306 (6th Cir.1984) (method of examining relevant certification facts clearly erroneous where petitioners "were given no opportunity to dispute whether there was a limited fund"). The district court's ex parte proceeding denied petitioners their right to contest Raymark's assertions.[5]
 
 
 17
 Finally, the district court's own findings raise grave doubts as to the propriety of certifying a class of "all persons ... who have or who will have in the future claims against Raymark Industries, Inc. for damages ... resulting from exposure to asbestos." Rule 23 requires that for class certification to be appropriate there must be "commonality" and "typicality." That is, there must be "questions of law and fact common to a class [and] the claims or defenses of the representative parties are typical of claims or defenses of the class." Fed.R.Civ.P. 23(b)(1)(B).
 
 
 18
 The district court noted that Raymark and its predecessor in interest had manufactured and sold such different sorts of items as "cloth, tape, gaskets, packings, brakelinings, and clutch facings." (Order at 2). It also listed at least four separate maladies caused by asbestos: "pleural changes, asbestosis, lung cancer, or mesothelioma." (Order at 9). Although the record on commonality and typicality of the class is sparse,[6] the district court's order on its face encompasses a potentially wide variety of different conditions caused by numerous different types of exposures. We have no indication that claimants' experiences share any factors other than asbestos and Raymark in common. See Dalkon Shield, 693 F.2d at 852-54 (discussing inappropriateness of class action device for mass product liability actions); Yandle v. PPG Ind. Inc., 65 F.R.D. 566, 570-71 (E.D.Tex.1974) (denying class certification to workers in asbestos plant on lack of commonality grounds where employees worked at different positions, were employed for different periods of time, and asserted different theories of recovery); In re Asbestos School Product Liability Litigation, 606 F.Supp. 713, 714 (J.P.M.L.1985) (denying motion to consolidate asbestos claims brought by school districts because common questions of fact did not predominate). See also Advisory Comm. Note to 1966 Rev. of Rule 23(b)(3), 39 F.R.D. 69, 103 (stating mass accidents resulting in injuries to numerous people are generally inappropriate subjects of class actions). The district court's summary findings of commonality and typicality of the variety of claims presented are clearly erroneous.[7]
 
 
 19
 Accordingly, the petition for the writ of mandamus is GRANTED and the district court is DIRECTED to VACATE its order certifying the class and staying all related litigation.
 
 
 
 [1]
 Although the court noted that the "book value" of Raymark was $60 million, it made no finding as to the actual value of the company which it admitted was probably substantially larger
 
 
 [2]
 The Anti-Injunction Act, 28 U.S.C.A. Sec. 2283, states:
 A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or when necessary to aid its jurisdiction, or to protect or effectuate its judgments.
 28 U.S.C.A. Sec. 2283.
 
 
 [3]
 Congress did not enact Rule 23, or any of the other Federal Rules of Civil Procedure. The Supreme Court's authority to promulgate Rule 23 derives from the Rules Enabling Act, 28 U.S.C.A. Sec. 2072, which by its terms forbids the rules to "abridge, enlarge, or modify" any substantive right. In Mitchum v. Foster, 407 U.S. 225, 237, 92 S.Ct. 2151, 2159, 32 L.Ed.2d 705 (1972), the Supreme Court construed the express authorization exception to the Anti-Injunction Act to be limited to statutes which create a "specific and uniquely Federal right or remedy." Thus, Mitchum constrains the court's injunctive power
 
 
 [4]
 The "necessary to aid its jurisdiction" proviso has been construed extremely narrowly. Atlantic Coast Line Railroad Co. v. Locomotive Engineers, 398 U.S. 281, 297, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970) (doubts as to propriety of injunction should be resolved in favor of permitting state courts to proceed). In any event, the relevant object of the district court's jurisdiction would seem to be Raymark's assets and its insurance funds--the so-called "limited fund." Those monies were never tendered to the district court and therefore are not a res subject to the court's jurisdictional control. Raymark is demanding the sort of protection provided by the automatic stay afforded bankruptcy petitioners, see 11 U.S.C.A. Sec. 362 (a good example of an express exception to the Anti-Injunction Act), without filing for bankruptcy
 
 
 [5]
 The petitioners may also have the right to opt out of even a mandatory class action where the predominant issue is money damages. In the context of a state court opt-out class action, and specifically limiting its holding to money damages, the Supreme Court has stated that "due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812, 105 S.Ct. 2965, 2974, 86 L.Ed.2d 628 (1985). A literal reading of Shutts would provide another basis for vacating the district court's order. However, no federal appellate court has yet so held, and we need not reach this issue in the present case
 
 
 [6]
 The court seemed to base its finding on its personal experience and familiarity "with the nature of such cases and the specific medical and legal issues presented in each one." (Order at 7)
 
 
 [7]
 We do not hold that a products liability or mass accident suit could never be the proper subject of a class action, but we recognize that the prerequisites of commonality and typicality will normally be hard to satisfy. Some courts have noted that mass torts caused by a single transaction, i.e., a plane crash, might be proper subject of a class action. Dalkon Shield, 693 F.2d at 853. Other courts have held that certain discrete issues can be proper subjects for class actions. Jenkins v. Raymark, Inc., 782 F.2d 468, 472 (5th Cir.1986) (single issue of "state of art" defense certifiable in non-mandatory context)